**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, IOWA CITIZENS FOR COMMUNITY IMPROVEMENT, BAILING OUT BENJI, PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., and CENTER FOR FOOD SAFETY | |
| Plaintiffs, | No. 17-CV-00362-JEG-HCA |
| vs. | |
| KIMBERLEY K. REYNOLDS, in her official capacity as Governor of Iowa, TOM MILLER, in his official capacity as Attorney General of Iowa, and BRUCE E. SWANSON, in his official capacity as Montgomery County, Iowa County Attorney, | **BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS KIMBERLEY REYNOLDS, TOM MILLER, AND BRUCE SWANSON** |
| Defendants. | |

Defendants Kimberley Reynolds, Tom Miller, and Bruce Swanson (hereafter collectively referred to as "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) and Local Rule 7, hereby submit the following brief in support of their Motion to Dismiss:

**TABLE OF CONTENTS**

Pages

**I.   INTRODUCTION** ...............................................................................................................3

**II.   LEGAL STANDARD** .........................................................................................................4

**III.   ARGUMENT** .....................................................................................................................5

    **A. THE PLAINTIFFS LACK STANDING TO CHALLENGE IOWA'S AG-FRAUD STATUTE** ...................................................................................................6

        1. Plaintiffs Must Set Forth Facts Establishing any Potential Harm Suffered is Qualitatively and Temporally Concrete, as Well as Distinct and Palpable, as Opposed to Merely Abstract .........................................................................................6

2. Plaintiffs have Not Plead Sufficient Facts to Satisfy the Requisite Level of Specificity and Thus Fail to Take Their Claims Beyond the Speculative and Hypothetical .......................................................................................7

    **a. Animal Legal Defense Fund ("ALDF")** ................................................8

    **b. People for the Ethical Treatment of Animals ("PETA")** ..................11

    **c. Iowa Citizens for Community Improvement ("ICCI")**.....................12

    **d. Bailing Out Benji ("BOB")** ...............................................................13

    **e. Center for Food Safety ("CFS")** ........................................................15

**B. PLAINTIFFS FAIL TO STATE A CLAIM THAT IOWA'S AG-FRAUD STATUTE VIOLATES THEIR FIRST AMENDMENT RIGHTS TO FREE SPEECH** ....................................................................................................16

1. Lying to Gain Access to or Employment, with an Intent to Commit an Unauthorized Act, at an Agricultural Production Facility are Not Protected by the First Amendment ...............................................................17

2. Plaintiffs' Reliance upon *Otter* and *Herbert* is Misguided as Both are Either Distinguishable or Erroneous as a Matter of Law ......................................22

    **a. *Animal Legal Defense Fund v. Otter*** ................................................22

    **b. *Animal Legal Defense Fund v. Herbert*** ...........................................25

**C. PLAINTIFFS FAIL TO STATE A CLAIM THAT IOWA'S AG-FRAUD STATUTE VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT** ..........................................................................28

1. Iowa's Ag-Fraud Statute is Rationally Related to a Legitimate Governmental Interest .............................................................................29

    **a. Legitimate Governmental Interest** ....................................................29

    **b. Rationally Related** .............................................................................31

2. Iowa's Ag-Fraud Statute is Not Invalidated by any Alleged Animus ......................34

    **a. A law Supported by a Rational Basis is not Invalidated by Alleged Animus** ...............................................................................................34

    **b. The Motivations of Individual Legislators is Not a Basis to Invalidate**

**an Otherwise Constitutional Law**.......................................................................35

    **c.  Any Alleged Animus Motivating the Enactment of Iowa's Ag-Fraud Statute is Not Sufficient to Invalidate an Otherwise Constitutional Law**.......37

**IV. <u>CONCLUSION</u>** .................................................................................................38

## I.  <u>INTRODUCTION</u>

In 2012, the Iowa Legislature passed H.F. 589, "Agriculture Production Facility Fraud" ("Ag-Fraud"), which was signed by the Governor and codified as Iowa Code section 717A.3A. The Ag-Fraud statute criminalizes: a) obtaining access to an agricultural production facility by false pretenses; and b) making a false statement or representation as part of an application or agreement to be employed at an agricultural production facility, if the person knows the statement to be false, and makes the statement with an intent to commit an act not authorized by the owner of the facility, knowing that the act is not authorized.  Iowa Code §§ 717A.3A(1)(a)-(b) (2017).  The first violation of the Ag-Fraud statute is a serious misdemeanor, and any subsequent violation(s) is an aggravated misdemeanor.  *Id*. at § 717A.3A(2)(a)-(b) (2017).

Plaintiffs are various organizations who allege they are affected by enactment and threatened enforcement of the Ag-Fraud statute.  Plaintiffs are alleging their preferred investigatory method, lying to gain access to an agricultural production facility in order to surreptitiously record activity within said facility, is protected by the United States Constitution. Specifically, they have asserted the statute violates their First Amendment right to free speech and their Fourteenth Amendment rights to equal protection and due process.  Defendants move to dismiss the entire Complaint on the grounds that Plaintiffs do not have standing to challenge the law.  Even assuming *arguendo* the Plaintiffs have standing, the Court should dismiss Plaintiffs' Complaint because they have failed to state a claim upon which relief can be granted.

There is no First Amendment protection for the conduct specifically prohibited by Iowa's Ag-Fraud statute.  Iowa's Ag-Fraud statute does not violate the Equal Protection Clause because it is supported by a rational basis and was not motivated by animus.

## II.   <u>LEGAL STANDARD</u>

Defendants move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).   Under Rule 12(b)(1), the district court has no subject matter jurisdiction if a plaintiff lacks standing.  *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002).  The party invoking federal jurisdiction bears the burden of establishing standing.  *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003).  When considering a 12(b)(1) motion to dismiss, the Court must accept as true all material allegations of the complaint and construe the complaint in favor of the nonmoving party, but the Court does not assess the overall merits of the Complaint in the standing inquiry.  *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012).

Under Rule 12(b)(6), a complaint should be dismissed where a party has failed to state a claim upon which relief may be granted.  In reviewing a 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party.  *In re Operation of Missouri River System Litigation*, 418F.3d 915, 917 (8th Cir. 2005).  The Eighth Circuit has stated that although such motions:

> '[do] not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' *Bell Atlantic Corp. v. Twombly*, [550] U.S. [544, 553-556], 127 S. Ct. 1955, 1964-65, 167 L.Ed. 2d 929 (2007).  The complaint must allege facts, which, taken as true, raise more than a speculative right to relief.  *Id.* at 1965.  Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate.  *Parnes v. Gateway 2000*, Inc., 122 F.3d 539, 546 (8th Cir. 1997).

*Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).  However, threadbare recitals of elements supported by mere conclusory statements—"unadorned, the-defendant-unlawfully-harmed-me accusation[s]" or "naked assertion[s] devoid of further factual enhancement"—will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555, 557).

## III.   <u>ARGUMENT</u>

The Court should dismiss Plaintiffs' Complaint in its entirety because Plaintiffs lack standing, and even if they had standing, they have failed to state a claim upon which relief can be granted.  Based upon the non-conclusory factual allegations made in Plaintiffs' Complaint, which Defendants admit for purposes of this Motion to Dismiss, Plaintiffs have not demonstrated the Ag-Fraud statute invades their legally protected interests or the alleged harm Plaintiffs will suffer is "qualitatively and temporally concrete," as well as "distinct and palpable, as opposed to merely abstract."

Assuming *arguendo* that Plaintiffs have standing, Defendants move to dismiss Plaintiffs' Complaint in its entirety for failure to state a claim upon which relief may be granted.  Plaintiffs' first and second causes of action should be dismissed because the conduct prohibited by Iowa's Ag-Fraud statute is not protected under the First Amendment.  Controlling precedent establishes that there is no First Amendment right to use false pretenses to gain access to an agricultural production facility or employment at said facility, with the intent to commit an unauthorized act, including, but not limited to, undercover audiovisual recording.  Plaintiffs' third cause of action should also be dismissed because Iowa's Ag-Fraud statute does not violate the Equal Protection Clause as it is supported by a rational basis, and any alleged animus in enacting the law does not invalidate it.

5

## A. THE PLAINTIFFS LACK STANDING TO CHALLENGE IOWA'S AG-FRAUD STATUTE.

### 1. Plaintiffs Must Set Forth Facts Establishing any Potential Harm Suffered is Qualitatively and Temporally Concrete, as Well as Distinct and Palpable, as Opposed to Merely Abstract.

Standing functions as a "'threshold question' a litigant invoking federal jurisdiction must satisfy before the court may hear the case." *Jackson v. Abendroth & Russell, P.C.*, 207 F.Supp.3d 945 (S.D. Iowa 2016) (citing *Warth*, 422 U.S. at 498). To establish standing, a plaintiff must at a minimum show "(1) an 'injury-in-fact' that (2) is 'fairly … trace[able] to the challenged action of the defendant' and (3) is 'likely … [to] be redressed by a favorable decision' in court." *Id*. at 950-51 (citing *ABF Freight Sys., Inc. v Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011) (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992))). The injury-in-fact element requires a plaintiff to establish "'an invasion of a legally protected interest' that is both 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 951 (citing *Lujan*, 504 U.S. at 560).

An organization can assert standing on its own behalf, but, like an individual plaintiff, the organization must meet the general standing requirements applied to individuals—show an actual or threatened injury-in-fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision. *National Taxpayers Union, Inc. v. U.S.*, 68 F.3d 1428, 1433 (D.C. Cir. 1995). The organization must demonstrate that it has suffered an injury in fact, including "[s]uch concrete and demonstrable injury to the organization's activities—with [a] consequent drain on the organization's resources—constitut[ing] ... more than simply a setback to the organization's abstract social interests." *Id*.

Where a plaintiff has asserted First Amendment claims,[1] the injury-in-fact element can be satisfied as long as the plaintiff "is objectively reasonably chilled from exercising his First Amendment right to free expression in order to avoid enforcement consequences." *Republican Party of Minn., Third Congressional Dists. v. Klobouchar*, 381 F.3d 785, 792 (8th Cir. 2004). The objectively reasonably chilling of the First Amendment right to free expression exists if there is "a credible threat of prosecution under that statute if the plaintiff actually engages in the prohibited expression." *Id*. Although the standing requirements are less rigorous in cases concerning First Amendment claims, a threatened injury must still be "qualitatively and temporally concrete, as well as 'distinct and palpable, as opposed to merely abstract.'" *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

Despite Plaintiffs' claims of suffering a subjective chill of their First Amendment rights, their Complaint contains too many contingencies and hypothetical scenarios to demonstrate their alleged injury. Plaintiffs' assertions of harm are too speculative to demonstrate standing, and as a result, this Court does not have subject matter jurisdiction to hear Plaintiffs' claims.[2] Accordingly, Plaintiffs' Complaint should be dismissed in its entirety.

   2.   Plaintiffs have Not Plead Sufficient Facts to Satisfy the Requisite Level of Specificity and Thus Fail to Take Their Claims Beyond the Speculative and Hypothetical.

Accepting as true all material allegations of the Complaint, Plaintiffs have not satisfied

---

[1] Although Defendants do not concede that the Ag-Fraud statute prohibits conduct that is protected by the First Amendment (*See* Section III.B. of this Brief, pp. 16-28), for purposes of this standing analysis alone, Defendants will accept that Plaintiffs have asserted valid First Amendment claims so as to avoid "put[ting] the merits cart before the standing horse." *People for the Ethical Treatment of Animals, Inc. v. Stein*, 2017 WL 1683188, 5 (M.D.N.C. 2017) (*appeal docketed*, No. 17-1669 (4th Cir. May 26, 2017)) (quoting *Cooksey v. Futrell*, 721 F.3d 226, 239 (4th Cir. 2013) (quoting *Initiative &Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006))).
[2] In addition, given that Plaintiffs cannot satisfy the less rigorous standing requirements for claims of First Amendment violations, they certainly cannot satisfy the traditional standing requirements set forth in *Lujan*, which should apply since Plaintiffs' First Amendment rights are not implicated by the Ag-Fraud statute.

the requisite standing requirements.  Plaintiffs have not established that any harm imposed by the Ag-Fraud statute is "qualitatively and temporally concrete, as well as 'distinct and palpable, as opposed to merely abstract.'"  *Whitmore*, 495 U.S. at 155.  Plaintiffs' claims are too remote and speculative to for purposes of the imminence requirement for standing.  Accordingly, Plaintiffs lack standing and their claims should be dismissed.[3]

### a.  Animal Legal Defense Fund ("ALDF").

ALDF asserts that it has identified agricultural production facilities in Iowa where it would seek to conduct undercover, employment-based investigations, and would retain a licensed investigator to conduct said investigations.  Complaint ¶ 91.  ALDF has "taken steps to find a suitable investigator but cannot take further actions to obtain agricultural employment because of [the Ag-Fraud statute]."  Complaint ¶ 103.  ALDF asserts their inability to conduct undercover, employment-based investigations creates an information vacuum that undermines their "litigation, legislation, outreach, and educational programs."  Complaint ¶ 109.  ALDF also asserts they are forced to divert money and resources away from their core educational and outreach programs to focus on the social harms of "Ag-Gag laws."  Complaint ¶ 107.

ALDF has not plead any specific plans to violate Iowa Code sections 717A.3A(1)(a) or (b).  ALDF can take an investigation all the way through the planning stage and even somewhat into the implementation stage, by identifying the specific operation they intend to investigate, the person they plan to use as an undercover operative, obtaining employment applications for the

---

[3]  Although the courts held that the plaintiffs had standing in the three (3) similar cases referenced in Plaintiffs' Complaint, *Herbert*, *Western Watersheds Project*, and *Otter*, those decisions are not controlling.  Complaint ¶¶ 132-36; *Animal Legal Defense Fund v. Herbert*, 2017 WL 2912423 (D. Utah 2017); *Western Watersheds Project v. Michael*, 196 F.Supp.3d 1231 (2016) (*rev'd on other grounds*, 869 F.3d 1189 (10th Cir. 2017)); *Animal Legal Defense Fund v. Otter*, 118 F.Supp.3d 1195 (D. Idaho 2015) (*appeal docketed and argued*, No. 15-35960 (9th Cir. May 12, 2017)).  Moreover, those cases are distinguishable for the reasons set forth in this Brief.  Here, Plaintiffs' Complaint contains too many contingencies and hypothetical scenarios to demonstrate the requisite level of injury, and as a result, they have failed to demonstrate that any alleged harm is "qualitatively and temporally concrete, as well as 'distinct and palpable, as opposed to merely abstract.'"  *Whitmore*, 495 U.S. at 155.

specific operation, and go as far as the property line of the operation they have targeted before violating the law.  However, ALDF has not identified a particular facility, a specific investigator, a specific time frame, or an imminent or specific "litigation, legislation, outreach, or educational program" it plans to undertake but for the Ag-Fraud statute.

There are too many contingencies and hypothetical scenarios, including decisions by independent persons, in Plaintiffs' Complaint to demonstrate their alleged injury.  Here, for the Plaintiffs to suffer an immediate threat of harm, the following sequence of events must occur: 1) a job opening posted at a particular facility; 2) find a candidate who is qualified for the job; 3) a candidate who is willing to lie about their employment history; 4) a candidate willing to engage in conduct that violates the Ag-Fraud statute; 5) have that candidate get interviewed and selected by the facility; and 6) have the employee actually engage in the prohibited conduct.  *See Stein*, 2017 WL 1683188 at 10 (court concluded plaintiffs lacked standing to challenge a statute creating a private cause of action for property owners against persons, including employees, who enter nonpublic areas of their property and engage in conduct that exceeds the persons authority to enter those areas) (*appeal docketed*, No. 17-1669); *but cf. St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 485 (8th Cir. 2006) (court concluded plaintiffs satisfied standing requirements to challenge statute restricting corporate contributions to political candidates because they identified six specific contributions they wanted to make and a fear of prosecution).

This case is more similar to *Stein* than *Gaertner*.  In *Stein*, the court, reviewing plaintiffs'[4] complaint that a North Carolina law prohibiting certain conduct, including undercover, employment based video-recording, violated their First Amendment rights,

---

[4] PETA, ALDF, and CFS were all Plaintiffs in the district court case as well as the appeal to the Fourth Circuit. *Stein*, 2017 WL 1683188 (*appeal docketed*, No. 17-1669 (4th Cir. May 26, 2017)).

determined that there were too many contingencies that needed to occur and decisions that needed to be made by independent parties to demonstrate the imminent harm necessary to establish standing.  2017 WL 1683188 at 6-14.  Many of the same contingencies and decisions by independent actors referenced above were also present in *Stein*.  *Id*. at 10.  Conversely, in *Gaertner*, Plaintiffs plead six specific expenses they desired to make, including the specific offices or activity the expenses would be made for.  439 F.3d at 483-84.  The court determined that the level of specificity of the conduct plaintiff wished to engage in, combined with the reasonable fear of prosecution, sufficed to establish standing.  *Id*.  Here, as previously indicated, Plaintiffs have not identified the conduct that would be prohibited by the Ag-Fraud statute with the same level of specificity, and there are too many contingencies and decisions by independent actors that are unknown, unlike in *Gaertner*, where the plaintiffs had sole control over the conduct that would violate the statute—making expenditures on political candidates.  *Id*.  ALDF has not alleged the requisite level of specificity with their plans and thus they fail to take their claims beyond the speculative or hypothetical.

Moreover, ALDF's assertions that it is harmed because it has to divert money to address the Ag-Fraud statute are not sufficient to establish standing.  *See Americans for Safe Access v. Drug Enforcement Admin.*, 706 F.3d 438, 458 (D.C. Cir. 2013) (LeCraft Henderson, J., dissenting) (an organization's inability to "allocate issue advocacy expenses in the way it would prefer" … "is insufficient to establish standing."); *Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006) ("an organization is not injured by expending resources to challenge the regulation itself; we do not recognize such self-inflicted harm."); *Ass'n for Retarded Citizens of Dallas v. Dallas County Mental Health and Mental Retardation Center Bd. of Tr.*, 19 F.3d 241, 244 (5th Cir. 1994) ("The mere fact that an

organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization."). ALDF has failed to assert facts sufficient to establish any harm suffered as a result of the Ag-Fraud statute is "qualitatively and temporally concrete, as well as 'distinct and palpable, as opposed to merely abstract.'" *Whitmore*, 495 U.S. at 155.

> **b.  People for the Ethical Treatment of Animals ("PETA").**

PETA asserts that at least 15 whistleblowers have contacted PETA alleging cruel or inhumane treatment of animals at agricultural production facilities, but PETA has been unable to conduct undercover, employment-based investigations because of the Ag-Fraud statute. Complaint ¶ 92.  PETA has "taken steps to find a suitable investigator but cannot take further actions to obtain agricultural employment because of [the Ag-Fraud statute]."  Complaint ¶ 103. PETA asserts their inability to conduct undercover, employment-based investigations creates an information vacuum that undermines their "litigation, legislation, outreach, and educational programs."  Complaint ¶ 109.  PETA also asserts they are forced to divert money and resources away from their core educational and outreach programs to focus on the social harms of "Ag-Gag laws."  Complaint ¶ 107.

Similar to ALDF, PETA has not plead any specific plans to violate Iowa Code sections 717A.3A(1)(a) or (b).   PETA has not identified a particular facility, a specific investigator, a specific time frame, or an imminent or specific "litigation, legislation, outreach, or educational program" it plans to undertake but for the Ag-Fraud statute.  There are too many contingencies and hypothetical scenarios, including decisions by independent persons, in Plaintiffs' Complaint to demonstrate PETA's alleged injury.  *See Stein*, 2017 WL 1683188 at 10; *but cf. Gaertner*, 439 F.3d at 483-84.  PETA has not alleged the requisite level of specificity with their plans and thus

they fail to take their claims beyond the speculative or hypothetical.

Moreover, assuming the 15 alleged whistleblowers identified by PETA did not obtain employment with the agricultural production facility under false pretenses with an intent to commit an unauthorized act, there is nothing stopping the whistleblowers from secretly recording the conditions within the facility and reporting said conditions to third parties or even law enforcement.  Iowa's Ag-Fraud statute does not prohibit secret recordings and whistleblowing from legitimate employees.  *See* Iowa Code § 717A.3A(1)(b).  PETA's assertions of an information vacuum are belied by their own assertions of the availability of multiple persons with access to the information sought by PETA.  *See* Complaint ¶ 92.

PETA's claims that it is harmed because it has to divert money to address the Ag-Fraud statute are not sufficient to establish standing for the same reasons ALDF did not establish standing.  *See Americans for Safe Access*, 706 F.3d at 458; *Abigail Alliance*, 469 F.3d at 133; *Ass'n for Retarded Citizens of Dallas*, 19 F.3d at 244.  PETA has failed to assert facts sufficient to demonstrate any harm suffered as a result of the Ag-Fraud statute is "qualitatively and temporally concrete, as well as 'distinct and palpable, as opposed to merely abstract.'" *Whitmore*, 495 U.S. at 155.

### c.  Iowa Citizens for Community Improvement ("ICCI").

ICCI asserts that it has conducted undercover, employment-based investigations prior to passage of the Ag-Fraud statute.  Complaint ¶ 105.  As a result of the statute, ICCI asserts it is unable to obtain documentary evidence of illegal dumping in Iowa's waterways and is limited to what evidence is viewable from public property.  *Id*.  ICCI also asserts they are forced to divert money and resources away from their "core educational and outreach programs" to focus on the social harms of "Ag-Gag laws," and cannot acquire information or documentary evidence

12

obtained in an undercover manner to inform the public about the harms of factory farming.

Complaint ¶¶ 107, 113.

Similar to ALDF and PETA, ICCI has not plead any specific plans to violate Iowa Code

sections 717A.3A(1)(a) or (b).   ICCI has only identified past efforts to conduct undercover,

employment-based investigations; this is not sufficient to establish an "imminent" harm.  *See*

*Lujan*, 504 U.S. at 564 (rejecting claim of standing based on past exposure to alleged illegal

conduct and declining to find standing on "'some day' intentions" of returning to area where

alleged illegal conduct occurred).  ICCI has not identified a particular facility, a specific

investigator, a specific time frame, or imminent or specific "core educational and outreach

programs" it plans to undertake but for the Ag-Fraud statute.  There are too many contingencies

and hypothetical scenarios, including decisions by independent persons, in Plaintiffs' Complaint

to demonstrate ICCI's alleged injury.  *See Stein*, 2017 WL 1683188 at 10; *but cf. Gaertner*, 439

F.3d at 483-84.  ICCI has not alleged the requisite level of specificity with their plans and thus

they fail to take their claims beyond the speculative or hypothetical.

ICCI's claims that it is harmed because it has to divert money to address the Ag-Fraud

statute are not sufficient to establish standing for the same reasons ALDF and PETA did not

establish standing.  *See Americans for Safe Access*, 706 F.3d at 458; *Abigail Alliance*, 469 F.3d

at 133; *Ass'n for Retarded Citizens of Dallas*, 19 F.3d at 244.  ICCI has failed to assert facts

sufficient to demonstrate any harm suffered as a result of the Ag-Fraud statute is "qualitatively

and temporally concrete, as well as 'distinct and palpable, as opposed to merely abstract.'"

*Whitmore*, 495 U.S. at 155.

### d.  Bailing Out Benji ("BOB").

BOB asserts it is unable to obtain access to puppy mills or dog auctions on agricultural

facilities to conduct undercover investigations of the conditions on said premises because of the Ag-Fraud statute.  Complaint ¶ 106.  BOB asserts they cannot send volunteers to dog auctions to investigate the conditions of the dogs for fear of prosecution under the "Ag-Gag" law. Complaint ¶ 112.  BOB also asserts they are forced to divert money and resources away from their "core educational and outreach programs" to focus on the social harms of "Ag-Gag laws." Complaint ¶ 107.

Similar to ALDF, PETA, and ICCI, BOB has not plead any specific plans to violate Iowa Code sections 717A.3A(1)(a) or (b).   BOB, like ICCI, has only identified past efforts to conduct undercover, employment-based investigations; this is not sufficient to establish an "imminent" harm.  *See Lujan*, 504 U.S. at 564.  BOB has not identified a particular facility, a specific investigator, a specific time frame, or imminent or specific "core educational and outreach programs" it plans to undertake but for the Ag-Fraud statute.  There are too many contingencies and hypothetical scenarios, including decisions by independent persons, in Plaintiffs' Complaint to demonstrate BOB's alleged injury. *See Stein*, 2017 WL 1683188 at 10; *but cf. Gaertner*, 439 F.3d at 483-84.  BOB has not alleged the requisite level of specificity with their plans and thus they fail to take their claims beyond the speculative or hypothetical.

BOB's claims that it is harmed because it has to divert money to address the Ag-Fraud statute are not sufficient to establish standing for the same reasons ALDF, PETA, and ICCI did not establish standing.  *See Americans for Safe Access*, 706 F.3d at 458; *Abigail Alliance*, 469 F.3d at 133; *Ass'n for Retarded Citizens of Dallas*, 19 F.3d at 244.  BOB has failed to assert facts sufficient to Demonstrate any harm suffered as a result of the Ag-Fraud statute is "qualitatively and temporally concrete, as well as 'distinct and palpable, as opposed to merely abstract.'" *Whitmore*, 495 U.S. at 155.

### e.  Center for Food Safety ("CFS").

CFS asserts they are forced to divert money and resources away from their "core educational and outreach programs" to focus on the social harms of "Ag-Gag laws."  Complaint ¶ 107.  CFS asserts that without documentary evidence obtained from undercover, employment-based investigations, they are unable to fulfill their "mission [to provide] information to the public about food production at agricultural operations."  Complaint ¶ 110.  CFS further asserts it has "imminent plans to rely on undercover investigations to pursue legal and policy work" as part of its mission.  Complaint ¶ 111.

Similar to the other Plaintiffs, CFS has not plead any specific plans to violate Iowa Code sections 717A.3A(1)(a) or (b).  CFS has only asserted that it has "imminent" plans to conduct an undercover investigation.  Complaint ¶ 111.  If simply asserting the word "imminent" were sufficient to establish standing, accepting form over substance would become ubiquitous in pleadings, rendering standing a meaningless requirement.  CFS has not identified a particular facility, a specific investigator, a specific time frame, or an imminent or specific program to provide "information to the public about food production at agricultural operations" it plans to undertake but for the Ag-Fraud statute. There are too many contingencies and hypothetical scenarios, including decisions by independent persons, in Plaintiffs' Complaint to demonstrate CFS's alleged injury. *See Stein*, 2017 WL 1683188 at 10; *but cf. Gaertner*, 439 F.3d at 483-84. It has not alleged the requisite level of specificity with their plans and thus they fail to take their claims beyond the speculative or hypothetical.

CFS's claims that it is harmed because it has to divert money to address the Ag-Fraud statute are not sufficient to establish standing for the same reasons the other Plaintiffs did not establish standing.  *See Americans for Safe Access*, 706 F.3d at 458; *Abigail Alliance*, 469 F.3d

at 133; *Ass'n for Retarded Citizens of Dallas*, 19 F.3d at 244.  CFS has failed to assert facts

sufficient to demonstrate any harm suffered as a result of the Ag-Fraud statute is "qualitatively

and temporally concrete, as well as 'distinct and palpable, as opposed to merely abstract.'"

*Whitmore*, 495 U.S. at 155.

Because none of the Plaintiffs can show any harm suffered from the Ag-Fraud statute is

"qualitatively and temporally concrete, as well as 'distinct and palpable, as opposed to merely

abstract,'" they lack standing and their claims should be dismissed.

> ### B.   PLAINTIFFS FAIL TO STATE A CLAIM THAT IOWA'S AG-FRAUD STATUTE VIOLATES THEIR FIRST AMENDMENT RIGHTS TO FREE SPEECH.

While Plaintiffs allege that the Ag-Fraud statute runs afoul of their First Amendment

right to free speech, in reality, Plaintiffs' Complaint makes it clear that they are asking this Court

to enshrine their preferred investigatory method—undercover, employment-based

investigations—with the protections of the First Amendment.  Complaint ¶¶ 7, 9.  Undercover,

employment-based investigations are the only investigative strategies the Plaintiffs complain

they cannot avail themselves of under the statute.  This is exemplified by Plaintiffs' statement

referencing undercover, employment-based investigations: "[r]ealistically, there is no

investigation strategy that would meaningfully reveal the conditions inside agricultural

production facilities without violating the statute."[5]  Complaint ¶ 104.

First Amendment challenges involve a three-step analysis: 1) whether the speech is

protected by the First Amendment; 2) if the speech is protected, the court must determine what

standard of review applies; and 3) application of the standard of review to the facts of the case.

*Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985).  Plaintiffs bear the

---

[5]  Plaintiffs' further assert that the "use of false pretenses and misrepresentations are essential tools for conducting undercover journalism and public interest investigations."  Complaint ¶ 9.

burden of satisfying the first factor, and here, they cannot meet that burden.  *See Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 n. 5 (1984).  The Ag-Fraud statute does not prohibit protected speech, but rather prohibits conduct facilitated by false statements or material omissions that induce the target to do something he or she would not otherwise do.  Specifically, the statute prohibits, under false pretenses, gaining entry to an agricultural production facility or obtaining employment at said facility, with the intent to commit an act not authorized by the owner.  Iowa Code §§ 717A.3A(1)(a)-(b) (2017).  Jurisprudence on the application of the First Amendment to undercover investigations demonstrates there is no First Amendment protection for the conduct specifically prohibited by Iowa's Ag-Fraud statute.

      1.    <u>Lying to Gain Access to or Employment, with an Intent to Commit an Unauthorized Act, at an Agricultural Production Facility are Not Protected by the First Amendment.</u>

Using false pretenses to gain access to an agricultural production facility—private property not open to the public—or employment at said facility, in order to commit an unauthorized act, including, but not limited to, surreptitiously recording conduct within said property, is not protected speech under the First Amendment, even when done with the altruistic goal of obtaining newsworthy information.  Cloaking ones-self in the mantle of citizen-journalist and claiming the right to free speech does not provide a carte blanch exemption from other principles of law or the legal rights of others, including trespass.[6]  Information gatherers must obey laws of general applicability.  *Branzburg v. Hayes*, 408 U.S. 665, 682-83 (1972) ("[a journalist] has no special privilege to invade the rights and liberties of others").  "Newsmen have no constitutional right of access [to places] when the general public is excluded."  *Id*. at 684-85.

---

[6]  *See Reasoner v. Chicago, R.I. & P.R. Co.*, 101 N.W.2d 739, 741 (Iowa 1960) ("a trespasser is one who is not rightfully upon the land or property of another, but enters it without the consent, either express or implied, of the owner or occupier thereof.").

This principle has been applied to the act of illegal eavesdropping, which the Supreme Court held was not protected under the First Amendment.  *Bartnicki v. Vopper*, 532 U.S. 514 (2001).  In *Bartnicki*, the Court noted that the First Amendment does not confer a license on news reporters or their news sources to violate valid criminal laws, even though the violation could result in the discovery of newsworthy information.[7]  *Id.* at 532 n.19; *see also Branzburg*, 408 U.S. at 691 ("Although stealing documents or private wiretapping could provide newsworthy information, neither reporter nor source is immune from conviction for such conduct.").  In a similar context, courts have held the First Amendment protections for freedom of speech do not provide a shield to intrusions upon private property or the right to privacy, even for information gatherers.  *See Hudgens v. NLRB*, 424 U.S. 507, 521 (1976) ("[t]he constitutional guarantee of free expression has no part to play" where picketers entered private shopping center to picket a retail store); *Lloyd Corp. v. Tanner*, 407 U.S. 551, 568 (1972) ("This Court has never held that a trespasser or uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only.").

A number of courts have held that the First Amendment does not protect undercover, employment-based investigations, including the use of hidden recording devices.  *Food Lion, Inc., v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 521 (4th Cir. 1999) (court held that First Amendment did not shield reporters, who obtained employment at grocery store under false pretenses and surreptitiously recorded store's food handling practices, from breach of loyalty and trespass claims); *Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971) (court rejected claim that First Amendment shielded reporter, who lied to obtain access and then surreptitiously

---

[7] While the Court in *Bartnicki* struggled with the constitutionality of a prohibition on the disclosure and dissemination by the press of wiretapped conversations provided by anonymous third parties under the First Amendment, that situation is not present in this case because the Ag-Fraud statute does not prohibit the disclosure or dissemination of any information.

recorded plaintiff in his home, from invasion of privacy suit); *accord Sanders v. Am. Broad Cos.*, 978 P.2d 67, 77 (Cal. 1999) (covert videotaping of employees of business by journalist posing as an employee violated employees' expectation of privacy); *Special Force Ministries v. WCCO Television*, 584 N.W.2d 789, 792-93 (MN. Ct. App. 1998) (court held that First Amendment did not shield reporter, who obtained a volunteer position at a facility for special needs persons and then surreptitiously recorded staffs' care of patients at the facility, from a claim of trespass); *but see Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345, 1352-53 (7th Cir. 1995) (court held that undercover videotaping of physicians in their office, which was open to the public, by purported patients interested in the physicians' services, did not support a claim of trespass). In *Dietemann*, the Ninth Circuit specifically rejected the contention that "hidden mechanical devices" are "indispensable tools of newsgathering," stating "[t]he First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office." 449 F.2d at 249.

The Supreme Court recently addressed whether certain fraudulent speech falls outside the First Amendment's protections, such that the speech can be criminalized. *See U.S. v. Alvarez*, 567 U.S. 709 (2012) (invalidating the Stolen Valor Act, which made it a crime to lie about receiving military decorations or medals, under the First Amendment on the grounds that it criminalized false speech and nothing more). In *Alvarez*, the Supreme Court held that the government may criminalize false statements when the statements cause a legally cognizable harm, stating "[w]here false claims are made to effect a fraud or secure moneys or other valuable considerations, say *offers of employment*, it is well established that the Government may restrict speech without affronting the First Amendment." *Alvarez*, 567 U.S. at 723 (emphasis added).

Consistent with *Alvarez*, depriving a property owner of their rights attending ownership or control of their private property through false pretenses is the sort of speech that falls outside the protections of the First Amendment.  No matter how altruistic the motive, Plaintiffs' have no right to gain access to private places through deceit for the purposes of committing an unauthorized act, including, but not limited to, surreptitious information gathering.  *See Id.*; *Bartnicki*, 532 U.S. at 532 n.19; *Hudgens*, 424 U.S. at 521; *Branzburg*, 408 U.S. at 682-83; *Lloyd Corp.*, 407 U.S. at 568; *Food Lion*, 194 F.3d at 521; *Dietemann*, 449 F.2d at 249.  Consequently, the conduct the Ag-Fraud statute prohibits, using false pretenses to gain access to an agricultural production facility—private property not open to the public—or employment at said facility, in order to commit an unauthorized act, including, but not limited to, surreptitiously record conduct within said property, is not protected speech under the First Amendment.  *Cf.  State v. Lacey*, 465 N.W.2d 537, 539-40 (Iowa 1991) (court declined to overturn convictions for criminal trespass on First Amendment grounds where defendants were engaged in speech on private property without consent of the owner).

This is the exact conclusion reached by the United States District Court for the District of Wyoming in a similar case involving several of the same Plaintiffs as the present case.[8]  *Western Watersheds Project*, 196 F.Supp.3d 1231 (*rev'd on other grounds*, 869 F.3d 1189).  In *Western Watersheds Project*, the court held that a Wyoming statute—similar to Iowa's Ag-Fraud statute—did not violate the First Amendment's free speech protections or the Fourteenth Amendment's Equal Protection Clause.[9]  196 F.Supp.3d at 1242-47.  The Wyoming statute

---

[8]  PETA and CFS were both Plaintiffs in the district court case as well as the appeal to the Tenth Circuit.  *Western Watersheds Project*, 196 F.Supp.3d 1231 (*rev'd on other grounds*, 869 F.3d 1189).
[9]  This Brief will address the court's ruling on the Equal Protection arguments in Section III.C. of the Brief, pp. 28-38.

specifically prohibited: a) entering private land with the intent to collect resource data[10]; b) entering private land and actually collecting resource data; and c) crossing private land without authorization to collect resource data on adjacent or proximate public land.  Wyo. Stat. §§ 6-3-414(a)-(c) (2017).

The court held that subsections (a) and (b) of the statute did not violate the First Amendment because "there is no First Amendment right to trespass upon private property for the purpose of collecting resource data."  *Western Watersheds Project*, 196 F.Supp.3d at 1242.  The lynchpin of the court's analysis was that, irrespective of the importance of the information sought, the restriction on conduct occurred on private property.  *Id*. at 1241 ("Plaintiffs' desire to access certain information, no matter how important or sacrosanct they believe the information to be, does not compel a private landowner to yield his property rights and right to privacy.").  The court's reasoning carried over to its decision upholding subsection (c), which prohibited resource data collection on public property if one had to cross private property to collect such data.  *Id*. at 1243-44.

Although it overruled the district court, the Tenth Circuit did not reverse the district court's ruling that the prohibition on resource data collection on private property did not violate the First Amendment, which Plaintiffs conveniently ignore in their Complaint (*see* ¶ 136). *Western Watersheds Project*, 869 F.3d at 1193-94.  In *Western Watersheds Project*, the Tenth Circuit, noting that Plaintiffs did not appeal the portion of the district court's decision that upheld the prohibition on resource data collection on *private* property, simply held that resource data collection on *public* property constituted speech protected under the First Amendment and remanded the case to the district court for analysis consistent with that conclusion.  *Id*. at 1193-

---

[10] "Resource data" was defined as "data relating to land or land use, including but not limited to data regarding agriculture, minerals, geology, history, cultural artifacts, archeology, air, water, soil, conservation, habitat, vegetation or animal species."  Wyo. Stat. § 6-3-414(e)(iv) (2017).

98 (emphasis added).  Moreover, the Tenth Circuit appears to tacitly accept the district court's

conclusion that the prohibition on resource data collection on private property did not violate the

First Amendment, which Plaintiffs' Complaint also conveniently ignores. *Id.* at 1194.  The Tenth

Circuit noted that the district court "relied on Supreme Court precedent holding that individuals

generally do not have a First Amendment Right to engage in speech on the private property of

others," and then went on to state "[a]lthough subsections (a) and (b) of the statutes govern

actions on private property, the district court was mistaken in focusing on these cases with

respect to subsection (c)." *Id.*

### 2. Plaintiffs' Reliance upon *Otter* and *Herbert* is Misguided as Both are Either Distinguishable or Erroneous as a Matter of Law.

Plaintiffs cite two other cases in their Complaint to support their claim that Iowa's Ag-

Fraud statute violates the First Amendment.  Complaint ¶¶ 132-35; *Herbert*, 2017 WL 2912423;

*Otter*, 118 F.Supp.3d 1195 (*appeal docketed and argued*, No. 15-35960).  Both cases are either

factually distinguishable or reach incorrect conclusions about the scope of the First

Amendment's free speech protections on private property.

### a. *Animal Legal Defense Fund v. Otter*.

In *Otter*, the court ruled that a statute criminalizing the "interference with agricultural

production" was unconstitutional under the First Amendment's free speech protections and the

Fourteenth Amendment's Equal Protection Clause.[11]  118 F.Supp.3d at 1202-12.  The relevant

portions of Idaho's statute prohibited: a) a non-employee entering an agricultural production

facility by misrepresentation or trespass; b) obtaining records of an agricultural production

facility by misrepresentation or trespass; c) obtaining employment at an agricultural production

---

[11]  This Brief will address the court's ruling on the Equal Protection arguments in Section III.C. of the Brief, pp. 28-38.

facility by misrepresentation or trespass with the intent to cause economic or other injury to the facility; and d) entering an agricultural production facility that is not open to the public and, without consent of the owner, makes an audio or video recording of the conduct of the facility's operations.  Idaho Code §§ 18-7042(a)-(d) (2017).  The court held that the statute created a content-based restriction on speech under the First Amendment and could not survive strict scrutiny.  *Otter*, 118 F.Supp.3d at 1207-09.

The court determined that the prohibition on lying was an unconstitutional restriction on free speech because lying to gain access to an agricultural operation does not cause a "legally cognizable harm."  *Id*. at 1202-04.  The court noted that, based upon *Alvarez*, lies to gain access to a facility would not have been made for material gain, and thus, would not fall outside the First Amendment's protections.  *Id*. at 1204.  The court further stated that lies used to facilitate undercover investigations are precisely the type of speech the First Amendment was meant to protect.  *Id*.  The court determined that the prohibition on certain audiovisual recordings was an unconstitutional restriction on free speech because its purpose was to silence animal activists and it only targeted speech concerning the "conduct of an agricultural production facility's operation while leaving unburdened other types of speech" at the facility.  *Id*. at 1205.

*Otter* is distinguishable from the present case, and even if it is not distinguishable, it reached an erroneous conclusion about the application of the First Amendment.  First, the statutes are markedly different.  Idaho's statute prohibits certain types of audiovisual recordings, but not others, and obtaining employment with an intent to cause harm, whereas Iowa's Ag-Fraud statute is silent on audiovisual recordings—it simply prohibits unauthorized actions—and only prohibits obtaining employment with an intent to commit an unauthorized act, irrespective of whether the person intends to cause harm.  *See* Idaho Code §§ 18-7042(a)-(d) (2017); Iowa

Code §§ 717A.3A(1)(a)-(b) (2017).  In addition, Idaho's statute would criminalize whistleblowing by a long-time, trusted employee, but Iowa's Ag-Fraud statute only criminalizes those who obtain employment under false pretenses with an intention to commit an unauthorized act.  *Id*.; *Otter*, 118 F.Supp.3d at 1208.

Second, in *Otter*, the court barely addressed the specific argument presented here, that using false pretenses to gain access to an agricultural production facility—private property not open to the public—or employment at said facility, in order to commit an unauthorized act, is not protected speech under the First Amendment.  The court discussed the competing interests for approximately one (1) paragraph and essentially concluded that the "journalistic and whistleblower" characteristics of undercover, employment-based investigations is more important than the heavily regulated, food production industry.  *Id*. at 1207.  There is no basis to disregard legitimate private property interests based upon the alleged value attached to speech.  *See Branzburg*, 408 U.S. at 684-85, 91.  Moreover, the court did not analyze or distinguish any of the aforementioned cases involving application of the First Amendment to private property and undercover, employment-based investigations, including *Dietemann*, where the Ninth Circuit held lying to gain access and then surreptitiously recording a person in their home is not protected speech under the First Amendment.  449 F.2d at 249; *see also Bartnicki*, 532 U.S. at 532 n.19; *Hudgens*, 424 U.S. at 521; *Branzburg*, 408 U.S. at 691; *Lloyd Corp.*, 407 U.S. at 568; *Food Lion, Inc.*, 194 F.3d at 521; *Sanders*, 978 P.2d at 77; *cf. Desnick*, 44 F.3d at 1352-53.

Third, the court erroneously relies upon *Alvarez* to support its conclusion that a private property owner does not suffer a "legally cognizable harm" when a person, using false pretenses, gain access their private property or employment at their facility, in order to commit an unauthorized act, because the lies were not made for "material gain."  The court's conclusion is

24

undermined by the express language of *Alvarez*, wherein the Supreme Court expressly stated that

lies to obtain "offers of employment" were not protected by the First Amendment.  567 U.S. at

723.  Moreover, obtaining access under false pretenses to a facility that is private, and to which a

person would otherwise have no legal right to access, in order to undertake unauthorized actions

*is* a "material gain."  *See Id.* at 722-23.

### b.        *Animal Legal Defense Fund v. Herbert.*

In *Herbert*, the court ruled that a statute criminalizing "agricultural operation

interference" was unconstitutional under the First Amendment's free speech protections.  2017

WL 2912423 at 15.  The Utah statute prohibited: a) leaving a recording device at an agricultural

operation without consent; b) obtaining access to an agricultural operation under false pretenses;

c) applying for employment at an agricultural operation with the intent to record the operation;

and d) recording an agricultural operation while trespassing.  Utah Code §§ 76-6-112(2)(a)-(d)

(2017).  The court held that the statute's prohibitions on lying and recording created content-

based restrictions on speech under the First Amendment and could not survive strict scrutiny.

*Herbert*, 2017 WL 2912423 at 12-15.

The court, relying upon *Alvarez*, *Desnick*, and *Food Lion*, determined that the prohibition

on lying was an unconstitutional restriction on free speech because lying to gain access to an

agricultural operation, without more, does not result in a trespass-type harm.  *Id.* at 8-9.  The

court noted that in *Desnick* and *Food Lion*, the appellate courts found that consent to enter

private property was not revoked—thereby turning that person into a trespasser—merely because

consent would have been withheld if the truth had been known.  *Desnick*, 44 F.3d at 1352-53;

*Food Lion, Inc.*, 194 F.3d at 518.  The court determined that the prohibition on audiovisual

recordings was an unconstitutional restriction on free speech because it concerned whether the

government can prosecute a person for speech on private property—not whether a private property owner can exclude a person from their property who wishes to speak—and it only targeted certain recordings concerning agricultural operations.   *Herbert*, 2017 WL 2912423 at 10-15.

Similar to *Otter*, *Herbert* is distinguishable from the present case—the statutes are different.  Utah's statute specifically prohibits certain types of audiovisual recordings, whereas Iowa's Ag-Fraud statute is silent on audiovisual recordings—it simply prohibits unauthorized actions. *See* Utah Code §§ 76-6-112(2)(a), (c)-(d) (2017); Iowa Code §§ 717A.3A(1)(b) (2017). Even if *Herbert* is not distinguishable, it reached an erroneous conclusion about the application of the First Amendment.  The court's conclusion that *Alvarez*, *Desnick*, and *Food Lion* support its determination that—because it does not result in a trespass-type harm—lying to gain access to an agricultural operation to conduct undercover audiovisual recording is protected speech is wrong for several reasons.

First, obtaining employment under false pretenses to commit an unauthorized act has been expressly excluded from First Amendment protection by the Supreme Court.  *Alvarez*, 567 U.S. at 723.  Second, *Desnick*, *Food Lion*, and, although not considered by the court in *Herbert*, *Dietemann*, all demonstrate that the closer a person gets to a purely private property—a home or business not open to the public—the more likely the First Amendment does not apply.  *Food Lion*, 194 F.3d at 518-19 (although the court held that defendants did not commit trespass when they obtained employment based upon misrepresentations, they did commit trespass by breaching their duty of loyalty to plaintiff when they secretly filmed non-public areas of the store because such filming went beyond their authority to enter the store as employees); *Desnick*, 44 F.3d at 1352-1353 (court held that the First Amendment protected defendants' use of false

pretenses to conduct undercover recordings of plaintiff's business activities where the recordings were conducted in the portion of the office that was open to anyone seeking treatment, and the recorded conversations were professional, not personal, communications with the undercover defendants themselves); *Dietemann*, 449 F.2d at 248 (court held that the First Amendment did not protect defendants where they obtained access to the plaintiff's home—where plaintiff was operating his business—under false pretenses and secretly recorded plaintiff).

Here, Plaintiffs' undercover, employment-based investigations fall much closer to *Dietemann* than *Desnick*. Iowa's Ag-Fraud statute prohibits using false pretenses to obtain access to an agricultural production facility—private property not open to the public—or employment at said facility (both a "material gain"), with intent to commit and unauthorized act. *See Alvarez*, 567 U.S. at 722-23. Generally, the public or consumers have no right to access agricultural production facilities—private property not open to the public—to peruse products or seek professional services, and consequently, no right to conduct recordings in said facilities. *See Food Lion*, 194 F.3d at 518-19; *Dietemann*, 449 F.2d at 248; *cf. Desnick*, 44 F.3d at 1352-1353; *Western Watersheds Project*, 196 F.Supp.3d at 1241-42 (*rev'd on other grounds*, 869 F.3d at 1194, 1197-98). Were this not the case, then plaintiffs could conduct their investigations as a member of the public, without the need to seek employment under false pretenses and commit trespass at the agricultural production facility. *See Reasoner v. Chicago, R.I. & P.R. Co.*, 101 N.W.2d 739, 741 (Iowa 1960) ("a trespasser is one who is not rightfully upon the land or property of another, but enters it without the consent, either express or implied, of the owner or occupier thereof."); *Desnick*, 44 F.3d at 1352-1353.

Plaintiffs are asking this Court to grant First Amendment protections to their preferred investigatory method—conduct that would otherwise be considered tortious or even criminal—

because it is the only way to "meaningfully" obtain newsworthy information.  *See* Complaint ¶

104.  Nevertheless, the altruistic desire to obtain newsworthy information does not somehow

transform a tortious or criminal act into protected speech under the First Amendment.  *See*

*Branzburg*, 408 U.S. at 682-83; *Food Lion*, 194 F.3d at 521 (referencing undercover,

employment-based investigations, the court stated "[w]e are convinced that the media can do its

important job effectively without resort to commission of run-of-the-mill torts.").

Iowa's Ag-Fraud statute prohibits using false pretenses to obtain access to an agricultural

production facility—private property not open to the public—or employment at said facility,

with intent to commit and unauthorized act, including, but not limited to, surreptitiously

recording conduct within said property.  This conduct—Plaintiffs' preferred investigatory

method—is not protected speech under the First Amendment, and therefore, Iowa's Ag-Fraud

statute does not regulate protected speech.  Plaintiffs have failed to state a claim upon which

relief can be granted.  Accordingly, Counts I and II of the Complaint should be dismissed.

### C.   PLAINTIFFS FAIL TO STATE A CLAIM THAT IOWA'S AG-FRAUD STATUTE VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.

Plaintiffs assert that Iowa's Ag-Fraud statute violates the Equal Protection Clause of the

Fourteenth Amendment because it substantially burden's Plaintiffs' exercise of a fundamental

right—free speech—and the motivating purpose behind the statute was animus.  Complaint ¶¶

151-56.  These arguments are without merit.  Plaintiffs preferred investigatory method is not

protected by the First Amendment.  Iowa's Ag-Fraud statute does not implicate a fundamental

right, and therefore, the statute is only subject to rational basis review.  Protecting private

property is a legitimate governmental interest, and Iowa's existing trespass laws were not

sufficient to deter persons from using false pretenses to obtain access or employment—with the

intent to commit an unauthorized act—at an agricultural production facility.  In addition, any alleged animus does not invalidate the statute.  Courts will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.  Even if this Court were to consider animus as a basis to invalidate the Ag-Fraud statute, Plaintiffs' alleged facts are insufficient to demonstrate the requisite animus.

       1.     <u>Iowa's Ag-Fraud Statute is Rationally Related to a Legitimate Governmental Interest.</u>

       **a.**     **Legitimate Governmental Interest.**

The Equal Protection Clause applies to statutory or regulatory classifications, and seeks to ensure that "all persons similarly situated should be treated alike." *Rem v. Bureau of Prisons*, 320 F.3d 791, 795 (8th Cir. 2003) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  Where a statute targets a "suspect class or involves a fundamental right," courts apply strict scrutiny, requiring that the legislation be narrowly tailored to further a compelling governmental interest.  *City of Cleburne*, 473 U.S. at 440; *KT&G Corp. v. Att'y Gen. of Okla.*, 535 F.3d 1114, 1137 (10th Cir. 2008).  But, parties cannot "insist on strict scrutiny merely by asserting a First Amendment right that the court ultimately finds not to be violated." *Dunagin v. City of Oxford, Miss.*, 718 F.2d 738, 752 (5th Cir. 1983).  "Where a law neither implicates a fundamental right nor involves a suspect or quasi-suspect classification, the law must only be rationally related to a legitimate government interest." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012); *see also KT&G*, 535 F.3d at 1137 (when no First Amendment rights have been violated, the Equal Protection Clause does not mandate strict scrutiny of the law).

Here, there is no fundamental right to use false pretenses to obtain access to an agricultural production facility—private property not open to the public—or employment at said facility (both a "material gain"), with intent to commit and unauthorized act. *See* Section III.B.

of this Brief, pp. 16-28; *Alvarez*, 567 U.S. at 722-23.   Nor does Iowa's Ag-Fraud statute involve

a suspect classification (e.g. alienage, race, or ancestry).   *See Massachusetts Bd. of Retirement v.*

*Murgia*, 427 U.S. 307, 312 n. 4 (1976).   Accordingly, the statute is subject to rational basis

review, not strict scrutiny. *See Dunagin*, 718 F.2d at 752; *Western Watersheds Project*, 196

F.Supp.3d at 1246 (referencing its conclusion that Wyoming's ban on collecting resource data on

private property was not protected by the First Amendment, the court held that Wyoming's

statute was not subject to strict scrutiny because it did not burden a fundamental right) (*rev'd on*

*other grounds*, 869 F.3d at 1194, 1197-98).   Under rational basis review, the party challenging

the statute bears the burden to "negative every conceivable basis which might support it."

*Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012).   If a legislative body could have

rationally decided that the means chosen promotes the stated objective, the law is constitutional.

*Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981) (court upheld state law

banning one type of milk container that caused environmental harms even though another

container, already established in the market, remained available).

    The Ag-Fraud statute's express purpose is to protect agricultural production facilities—

private property—from both unauthorized access to and conduct within said facilities.   Iowa

Code §§ 717A.3A(1)(a)-(b) (2017).   The protection of private property from unwanted intrusions

or unauthorized access is a legitimate governmental interest. *Western Watersheds Project*, 196

F.Supp.3d at 1247 (*rev'd on other grounds*, 869 F.3d at 1194, 1197-98); *See e.g.* Iowa Code

section 716.7 (2017) "Trespass defined"; *Cf. Dow Chemical Co. v. U.S.*, 476 U.S. 227, 236-37

(1986) ("Dow plainly has a reasonable, legitimate, and objective expectation of privacy within

the interior of its covered buildings, and it is equally clear that expectation is one society is

prepared to observe."); *Glass v. Paxton*, 2016 WL 8904948, 4-5 (W.D. Tex. 2016) (court

accepted respecting private property rights as a legitimate governmental interest against equal protection challenge to state's exemption for private universities from its campus carry policy for handguns).

### b.    Rationally Related.

The Ag-Fraud statute is rationally related to the State's legitimate governmental interest of protecting private property.  Although Iowa law already criminalizes trespassing, the Ag-Fraud statute seeks to provide a more effective deterrent to protect private property rights.  To violate Iowa's existing trespass statute, an entrant must: 1) enter or remain on the property without the express permission of the owner with the intent to commit a public offense, to use, remove therefrom, alter, damage, harass, or place anything animate or inanimate; 2) enter or remain on property without justification after being notified to leave; 3) enter the property with the intent to interfere with the lawful use of the property by others; or 4) intentionally record a person or place equipment to record said person, who has a reasonable expectation of privacy, through the window or any other aperture of a dwelling, without consent, while on the real property where the dwelling is located.  Iowa Code §§ 716.7(2)(a)(1)-(3),(7) (2017).

Despite Iowa's existing prohibitions on trespass, agricultural production facilities have long been targets of undercover, employment-based investigations.  Plaintiffs' admission in their Complaint about conducting extensive nationwide and Iowa-specific undercover, employment-based investigations prior to the Ag-Fraud statute provide strong evidence that Iowa's existing trespass laws did not deter persons from engaging in conduct prohibited by Iowa's Ag-Fraud statute.  Complaint ¶¶ 3-7, 66-82.  Iowa's legislature reasonably determined that because its existing laws were not sufficient to deter persons from using false pretenses to obtain access to an agricultural production facility or employment at said facility, in order to commit an

unauthorized act, it needed to enact a more specific deterrent for this type conduct. *See Western Watersheds Project*, 196 F.Supp.3d at 1246-47 (*rev'd on other grounds*, 869 F.3d at 1194, 1197-98); *Cf. Bartnicki*, 532 U.S. at 529 ("[i]f the sanctions that presently attach to a violation of [the law] do not provide sufficient deterrence, perhaps those sanctions should be made more severe."); *but see U.S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 535-37 (1973) (court ruled that anti-fraud amendment to food stamp law was not rationally related to legitimate governmental interest—preventing fraud—because, in part, there was no evidence that existing anti-fraud provisions in the statute were ineffective).

Although the court in *Otter* determined that Idaho's statute criminalizing the "interference with agricultural production" violated the Equal Protection Clause, it does not support a similar finding here. 118 F.Supp.3d at 1209-12. First, as previously indicted, *Otter* is distinguishable. Unlike in *Otter*, Iowa's Ag-Fraud statute prohibits using false pretenses to obtain access to an agricultural production facility or employment at said facility, with intent to commit an unauthorized act, regardless of whether the intent is to harm or benefit the owner. *See* Section III.B.2.a. of this Brief, pp. 22-25.

Second, even if *Otter* is not distinguishable, it is erroneous as a matter of law. In its analysis of the state's alleged legitimate governmental interest in protecting agricultural production facilities, the court not only faulted Idaho for protecting only those facilities—and not other types of businesses—it also weighed the public's purported interest in newsworthy information against the state's interest. *Otter*, 118 F.Supp.3d at 1210 ("[p]rotecting the private interests of a powerful industry, which produces the public's food supply, against public scrutiny is not a legitimate governmental interest."). Neither of these considerations are appropriate in reviewing a state's asserted governmental interest. A legislature need not "strike at all evils at

the same time or in the same way." *Clover Leaf Creamery*, 449 U.S. at 466.  Iowa's decision to

protect only agricultural production facilities in sections 717A.3A(a)-(b) does not mean that

statute runs afoul of the Equal Protection Clause.[12] *See Id.* ("a legislature may implement [its]

program step by step … adopting regulations that only partially ameliorate a perceived evil and

deferring complete elimination of the evil to future regulations.").  Moreover, regardless of the

importance of the information Plaintiffs allege they are entitled to, it is not a factor this Court

should consider in evaluating Iowa's interest in protecting private property.  *Id.* at 469 ("[I]t is up

to legislatures, not courts, to decide on the wisdom and utility of legislation.").

      Iowa' Ag-Fraud statute is rationally related to a legitimate governmental interest.

Protecting private property is a legitimate governmental interest, and Iowa's existing trespass

laws were not sufficient to deter persons from using false pretenses to obtain access to an

agricultural production facility or employment at said facility (both a "material gain"), with

intent to commit and unauthorized act, including, but not limited to, surreptitiously recording

conduct within said property.  *See Alvarez*, 567 U.S. at 722-23; *Western Watersheds Project*, 196

F.Supp.3d at 1246-47 (*rev'd on other grounds*, 869 F.3d at 1194, 1197-98).

---

[12]  Iowa's prohibition on recording a person through the window or any other aperture of a dwelling, without consent, while on the real property where the dwelling is located (Iowa Code § 716.7(2)(a)(7) (2017)), provides additional support for the principle that a legislature can adopt regulations "that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future generations." *Clover Leaf*, 449 U.S. at 466.  Similar to the Ag-Fraud statute's focus on a specific type of facility, Iowa's trespass law expressly criminalizes a specific type of recording: non-consensual recording of persons in a dwelling—who have a reasonable expectation of privacy—through a window-like opening while on the real property where the dwelling is located, while leaving other nonconsensual recordings alone (e.g. recordings in non-public areas of commercial buildings or other private property where a person may have a reasonable expectation of privacy; recordings of a person in a dwelling—who has a reasonable expectation of privacy—through a window-like opening while standing on real property where the dwelling is <u>not</u> located; and nonconsensual recording <u>within</u> the dwelling where the person is located and has a reasonable expectation of privacy).

2.     Iowa's Ag-Fraud Statute is Not Invalidated by any Alleged Animus.

a.     **A law Supported by a Rational Basis is not Invalidated by Alleged Animus.**

In addition to asserting that Iowa's Ag-Fraud statute violates the Equal Protection Clause

of the Fourteenth Amendment because it substantially burdens Plaintiffs' fundamental right to

free speech, Plaintiffs also assert that the statute violates the Equal Protection Clause because it

was motivated by animus towards animal rights groups.  Complaint ¶¶ 151-52.  Although the

Equal Protection Clause prohibits enacting a law based upon a "bare congressional desire to

harm a politically unpopular group," there is no independent animus analysis of a statute.

*Moreno*, 413 U.S. at 534.

The Supreme Court has held that evidence of animus alone does not invalidate a law.  *See*

*Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) ("[B]iases may often

accompany irrational (and therefore unconstitutional) discrimination, [but] their presence alone

does not a constitutional violation make.").  The limited relevance of animus follows from the

"familiar principle of constitutional law that [the Supreme] Court will not strike down an

otherwise constitutional statute on the basis of an alleged illicit legislative motive."  *City of*

*Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 48 (1986) (citing *United States v. O'Brien*, 391

U.S. 367, 383-84 (1968)); *accord City of Mobile v. Bolden*, 446 U.S. 55, 92 (1980) (Stevens, J.,

concurring in the judgment) ("[A] political decision that is supported by valid and articulable

justification cannot be invalid simply because some participants in the decisionmaking process

were motivated by a purpose to disadvantage a minority group.").  In other words, where a

rational basis exists for a law, there is no need to address claims of animus.  *See Gallagher*, 699

F.3d at 1020-21 (Eighth Circuit held that because statute was adequate under rational basis

review, there was no need to address claims of animus); *Wasatch Equality v. Alta Ski Lifts Co.*,

34

55 F.Supp.3d 1351, 1367-68 (D. Utah 2014) ("The requirement under the law is that there is some rational basis for the action taken, not that there is an absence of animus.").

This case is a far cry from *Moreno*, which Plaintiffs rely upon in support of their claim. In *Moreno*, the Supreme Court held that the statute's classification failed to further the government's interest in preventing fraud and also failed to benefit those intended.  413 U.S. at 538.  The Court reasoned that the sole remaining rationale for the statute was animus, which is not a legitimate governmental interest.  *Id.*  Here, Iowa's Ag-Fraud statute is supported by a rational basis.  *See* Section III.C.1. of this Brief, pp. 29-33.  As a result, this Court should eschew any further analysis of claims of animus by Plaintiffs.  *See Wisc. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 654 (7th Cir. 2013) ("*Moreno* is not a case, as the [Plaintiffs] urge, where the Court suggested a statute would have passed rational basis review but for animus towards a particular group.").

**b.     The Motivations of Individual Legislators is Not a Basis to Invalidate an Otherwise Constitutional Law.**

Even if this Court were to consider animus in its analysis of Plaintiffs' equal protection claim, the motives of individual legislators in supporting or opposing a bill should not be considered in identifying the bill's purpose.  Courts generally avoid reliance upon the motives of individual legislators in reviewing a statute's validity under the Equal Protection Clause.  *See City of Renton*, 475 U.S. at 48 (citing *O'Brien*, 391 U.S. at 384) ("[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork."); *Palmer v. Thompson*, 403 U.S. 217, 225 (1971) ("It is difficult or impossible for any court to determine the 'sole' or 'dominant' motivation behind the choices of a group of legislators.").

Here, the facts plead illustrate the practical difficulties in reviewing claims of animus based upon the motivations of individual legislators.  Plaintiffs have provided statements by four (4) legislators and one (1) statement by the Governor's Office as evidence of animus.  Complaint ¶¶ 50-56.  There are 100 representatives and 50 senators in the Iowa Legislature, for a combined total of 150 legislators.  Iowa Const. art. III, § 34.  Inferring the subjective motives of four (4) legislators to the entire 150-member legislative body in order to invalidate a statute on the basis of animus would set a dangerous precedent.  "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it," and many laws enacted by legislatures impact supporters/opponents of various causes disparately.  *O'Brien*, 391 U.S. at 384); *see Walker*, 705 F.3d at 654 (court, rejecting equal protection challenge to law that treated different public sector unions dissimilarly, stated "[a]s unfortunate as it may be, political favoritism is a frequent aspect of legislative action"); *Hearne v. Board of Education*, 185 F.3d 770, 775 (7th Cir. 1999) (court, rejecting an equal protection challenge to a law treating unionized Chicago teachers differently that teachers in other parts of the state, stated a law does not become "constitutionally defective because one of the reasons the legislators voted for it was to punish those who opposed them during an election campaign").

Moreover, the inherent difficulty in undertaking such a motive-finding endeavor in reviewing claims of animus based upon the statements of legislators has been detailed by the Supreme Court.  *Palmer*, 403 U.S. at 225 ("there is an element of futility in a judicial attempt to invalidate a law because of the bad motives of its supporters.  If the law is struck down for this reason, rather than because of its facial content or effect, it would presumably be valid as soon as the legislature or relevant governing body repassed it for different reasons."); *O'Brien*, 391 U.S. at 384 ("We decline to void essentially on the ground that it is unwise legislation which Congress

had the undoubted power to enact and which could be reenacted in its exact form if the same or

another legislator made a 'wiser' speech about it.").  Here, assuming this Court was to invalidate

the Ag-Fraud statute under the Equal Protection Clause based upon animus, the Iowa legislature

could simply re-authorize the same statute but ensure legislators only provide comments about

the importance of private property rights and refrain from any comments about animal rights

activists.

> **c.     Any Alleged Animus Motivating the Enactment of Iowa's Ag-Fraud Statute is Not Sufficient to Invalidate an Otherwise Constitutional Law.**

Even if this Court considers the motivations of individual legislators as part of any

animus review, any alleged animus is not sufficient to invalidate the statute.  Iowa's Ag-Fraud

statute is not directed at animal rights groups themselves.  Iowa's Ag-Fraud statute does not

target the rights of or eliminate privileges available to a class of persons based upon their status.

Susannah W. Pollvogt, "Unconstitutional Animus," 81 Fordham L. Rev. 887, 926 (2012)

("[A]nimus is present where the public laws are harnessed to create and enforce distinctions

between social groups—that is, groups of person identified by status rather than conduct."); *but*

*cf. U.S. v. Windsor*, 133 S.Ct. 2675, 2693–95 (2014) (Supreme Court invalidated federal law

prohibiting same-sex marriage under the Equal Protection Clause because the law's intent was to

impose a disadvantage on a group of people based upon their status); *Romer v. Evans*, 517 U.S.

620, 631–35 (1996) (Supreme Court held state's constitutional amendment barring legislative,

administrative, or judicial actions designed to protect homosexual persons from discrimination

violated the Equal Protection Clause because the prohibition disadvantages a group of people

based upon their status).

Here, the statute prohibits a type of conduct: using false pretenses to obtain access to an agricultural production facility or employment at said facility (both a "material gain'), with intent to commit and unauthorized act.  *See Alvarez*, 567 U.S. at 722023.  There is no right to trespass on private property under false pretenses, regardless of any altruistic motive.  Nothing in the statute restricts animal rights activists' advocacy rights; at most, Iowa's Ag-Fraud statute may preclude their preferred investigatory method.

Iowa's Ag-Fraud statute is rationally related to a legitimate governmental interest.  The statute was not enacted based upon a "bare congressional desire to harm a politically unpopular group," and therefore, Iowa's Ag-Fraud statute does not violate the Equal Protection Clause of the Fourteenth Amendment.  Plaintiffs have failed to state a claim upon which relief can be granted.  Accordingly, Count III of the Complaint should be dismissed.

## IV.    CONCLUSION

Because Plaintiffs have failed to demonstrate the Ag-Fraud statute invades their legally protected interests or the alleged harm Plaintiffs will suffer is both "qualitatively and temporally concrete, as well as distinct and palpable, as opposed to merely abstract," they lack standing. Furthermore, assuming *arguendo* that Plaintiffs have standing, Plaintiffs have failed to state a claim upon which relief may be granted.  Plaintiffs' first and second causes of action should be dismissed because the conduct prohibited by Iowa's Ag-Fraud statute is not protected under the First Amendment.  Plaintiffs' third cause of action should also be dismissed because Iowa's Ag-Fraud statute does not violate the Equal Protection Clause since it is supported by a rational basis.  In addition, any alleged animus in enacting the law does not invalidate it.  For these reasons, Defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety.

Respectfully submitted,

THOMAS J. MILLER
Attorney General of Iowa


  _/s/  Jeffrey S. Thompson_____
JEFFREY S. THOMPSON
Solicitor General
jeffrey.thompson@ag.iowa.gov


  _/s/  Jacob J. Larson_____
JACOB J. LARSON
Assistant Attorney General
jacob.larson@ag.iowa.gov


Hoover State Office Building
1305 E. Walnut Street, 2nd Floor
Des Moines, Iowa 50319
Phone:  (515) 281-5164
Fax:  (515) 242-6771
ATTORNEYS FOR DEFENDANTS